1  LATHAM & WATKINS LLP
       Kenneth M. Fitzgerald (Bar No. 142505)
2      Robert J. Blair (Bar No. 199164)
       Daniel J. Lenerz (Bar No. 226019)
3  600 West Broadway, Suite 1800
   San Diego, California 92101-3375
4  Telephone: (619) 236-1234
   Facsimile: (619) 696-7419
5
   Attorneys for Defendants FONDA HOPKINS and
6  FRANK KRYGER

7

8                   UNITED STATED DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10  WEIN- UND SEKTKELLEREI JAKOB GERHARDT NIERSTEINER SCHLOSSKELLEREIEN GmbH & Co.,KG, a German limited liability company and MAX DIETER ALTMANN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>FONDA HOPKINS, an individual, and FRANK KRYGER, an individual,<br><br>Defendants. | CASE NO. 07CV0673 BTM (WMC)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND, THIRD, AND FIFTH CLAIMS FOR RELIEF**<br><br>Date: August 10, 2007<br>Time: 11:00 a.m.<br><br>**PER CHAMBERS - NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

                              I.

                         INTRODUCTION

    Plaintiffs in this case are shareholders in two closely held corporations. They have sued two individuals who are officers and directors of those corporations, alleging that the individuals breached one contract and fraudulently induced Plaintiffs into entering several others. Central to Plaintiffs' complaint is their allegation that Defendants Fonda Hopkins and Frank Kryger misrepresented to Plaintiffs that certain fees paid to Hopkins and/or her corporation were sales commissions rather than management fees, misrepresentations that supposedly allowed the companies to pay Plaintiffs less than they were owed under an agreement between the parties.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\591192.1

CASE NO. 07CV0673 BTM (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

For the reasons explained below, these allegations fail to state a claim for breach of contract, for breach of the implied covenant of good faith and fair dealing, and for violation of California's Unfair Competition Law. Accordingly, those claims should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.

## FACTS

For purposes of this motion Defendants must accept the facts pleaded by Plaintiffs as true. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Jakob Gerhardt USA, Inc. ("JG USA") and W.G. Best Weinkellerei, Inc. ("W.G. Best") (collectively "the companies") are California corporations engaged in the business of importing, marketing and distributing wine. See First Amended Complaint ("FAC") ¶ 9. Defendants Fonda Hopkins and Frank Kryger are officers and directors of the companies; Hopkins also owns approximately one-third of the companies' stock. Id. Plaintiff Wein- und Sektkellerei Jakob Gerhardt Niersteiner Schlosskellereien GmbH & Co. KG ("Jakob Gerhardt") is a German limited liability company that owns approximately two-thirds of the companies' stock. Id ¶¶ 3, 9. Plaintiff Max Dieter Altmann, a German citizen, is Jakob Gerhardt's managing director and "holds [the companies'] shares on behalf of Jakob Gerhardt[.]" Id. ¶ 4. The stock owned by Hopkins is Class A stock, allowing her to vote for the companies' officers and directors; the stock owned by Jakob Gerhardt is Class B stock. Id. ¶ 11-13.

In 2004, the companies entered into management service agreements with Fonda Hopkins, LLC, a company wholly owned by Hopkins. Id. ¶ 13. The following year, on February 20, 2005, Plaintiffs and the companies entered into an agreement providing for the payment of royalties to Jakob Gerhardt and for a division of the companies' profits between Altmann and Fonda Hopkins, LLC. Id. ¶ 14; see also February 20, 2005 Agreement (Exhibit A). In this agreement, Plaintiffs and the companies agreed that Jakob Gerhard would receive €20,000 in royalties per month and 65.5% of the companies' declared annual profit after taxes, 80% of which was to be left in the companies. FAC ¶ 14; February 20, 2005 Agreement. They also agreed that Fonda Hopkins, LLC would receive 34.5% of the companies' declared annual profit

2

LATHAM&WATKINS™ SD\591192.1
ATTORNEYS AT LAW
SAN DIEGO

CASE NO. 07CV0673 BTM (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

after taxes, 80% of which was to be left in the companies. FAC ¶ 14; February 20, 2005 Agreement.

In the Fall of 2005, the companies stopped paying Jakob Gerhardt the €20,000 per month due it under the February 20, 2005 Agreement. FAC ¶ 18. On September 19, 2005, Plaintiffs and the companies entered into a Settlement Agreement in which Plaintiffs agreed to accept $300,000 in exchange for cancellation of the February 20, 2005 Agreement and any other sums the companies' owed Jakob Gerhardt. Id. ¶ 19; see also September 19, 2005 Settlement Agreement (Exhibit B). In the Settlement Agreement, Plaintiffs released all claims—including any and all present and future, foreseen and unseen causes of action—against the companies; their officers, directors shareholders, agents and employees; and Fonda Hopkins LLC. See September 18, 2005 Settlement Agreement at 1-2.

Plaintiffs have now filed suit against Kryger and Hopkins, requesting a finding that (1) the February 20, 2005 Agreement remains in effect and that Defendants are in breach of that agreement, id. ¶ 56; and (2) the September 19, 2005 Settlement Agreement is invalid and unenforceable, id. ¶ 57. Plaintiffs claims in support of the latter request are all based on fraudulent statements allegedly made by Defendants, specifically allegations that Defendants "intentionally misrepresent[ed] to Altmann/Jakob Gerhardt that the management fees paid to Hopkins and/or her business entities were 'sales commissions' paid to various sales agents of [the companies]." Id. ¶ 16. According to Plaintiffs, these alleged misrepresentations are material because "[s]ales commissions reduce the gross profit figures, and therefore correspondingly reduced the amount of gross profits available to Jakob Gerhardt as its agreed upon share under the February 2005 agreement." Id.

### III.

### ARGUMENT

Plaintiffs' complaint suffers from various defects, discussed more fully below. First, Defendants Hopkins and Kryger, sued in their individual capacity, are not the proper parties to a lawsuit alleging breach of a contract entered into by Plaintiffs and the companies, a defect that is fatal to Plaintiffs' second claim for relief for breach of contract and Plaintiffs' third

3

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\591192.1

CASE NO. 07CV0673 BTM (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

claim for relief for breach of the implied covenant of good faith and fair dealing. Second, nowhere in Plaintiffs' complaint do they allege that Defendants violated any law, nor do they allege any harm to competition, harm to consumers, or harm to a competitor, a defect that is fatal to Plaintiffs' fifth claim for relief for violation of California's Unfair Competition Law. For these reasons, Plaintiffs' second, third and fifth claims for relief should be dismissed for failure to state a claim upon which relief can be granted. See generally Fed. R. Civ. Proc. 12(b)(6).

### A. Plaintiffs' Breach of Contract Claim Should Be Dismissed Because Defendants Were Not Parties to the Contract At Issue

In their first amended complaint, Plaintiffs allege that Defendants negotiated a contract with Plaintiffs "regarding the payment of royalties to Jakob Gerhardt and the division of profits from the operation of the [companies]." FAC ¶ 14. Plaintiffs claim that this February 20, 2005 Agreement was entered into by "Hopkins and Kryger on the one hand, and Altmann and Jakob Gerhardt on the other hand," and that Kryger signed the agreement on Hopkins' behalf. Id. Plaintiffs then allege that Defendants breached the February 20, 2005 Agreement "by using their complete control of the [companies] to cause them to underpay Jakob Gerhardt the agreed upon share of the gross profits." Id. ¶ 16. Defendants also allegedly breached this agreement "by causing the [companies] to cease payment of the 20,000 Euros per month due and owing Jakob Gerhard under that agreement." Id. ¶ 18. Plaintiffs repeat these contentions in their second claim for relief for breach of contract. See id. ¶¶ 29-35.

The relevant writings, however, make clear that neither Hopkins nor Kryger were parties to the February 20, 2005 Agreement. While neither the February 20, 2005 Agreement nor the September 19, 2005 Settlement Agreement were attached to the first amended complaint, their contents should be considered in connection with this motion because those documents are referred to in the first amended complaint and are central to Plaintiffs' claims. See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."). Moreover, the contents of those documents should be treated "as 'part of

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN DIEGO

SD\591192.1

CASE NO. 07CV0673 BTM (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

the complaint, and thus [the Court] may assume that [their] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." Id. (quoting United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

Taking as true the contents of the February 20, 2005 Agreement and the September 19, 2005 Settlement Agreement, it becomes clear that Plaintiffs cannot show that Hopkins or Kryger, as individuals, were parties to the February 20, 2005 Agreement, and therefore that Plaintiffs cannot sustain their breach of contract claim against Hopkins and Kryger. While admittedly not a model of clarity, the first sentence of the February 20, 2005 Agreement expressly states that the payments at issue were to be made from "WG Best and Jakob Gerhardt USA to Jakob Gerhardt Deutschland and Vonda [sic] Hopkins LLC." February 20, 2005 Agreement (Exhibit A). Nothing in this Agreement imposes any duty upon Hopkins and Kryger as individuals, and nothing in the contract provides any benefits to them as such. See id.; cf. Cal. Civ. Code § 1549 ("A contract is an agreement to do or not to do a certain thing."); id. § 1550 (stating that, under California law, required elements of a contract include the consent of the parties thereto and sufficient consideration). Hopkins and Kryger are never mentioned by name in the Agreement, and Hopkins herself never signed it. Cf. id. § 1558 ("It is essential to the validity of a contract, not only that the parties should exist, but that it should be possible to identify them."); Westlye v. Look Sports, Inc., 17 Cal. App. 4th 1715, 1728 (1993) (finding that defendants could not invoke contract because "[n]othing in the rental agreement identifies the distributor defendants as parties to be bound or benefitted [sic] by the agreement"). Finally, Hopkins and Kryger are not parties to the September 19, 2005 Settlement Agreement, which Plaintiffs recognize "purported[] to cancel the February 2005 agreement and all other sums due and owing Jakob Gerhardt in return for a one-time payment of $300,000." FAC ¶ 19. Instead, the September 19, 2005 Settlement Agreement defines "the Parties" as JG USA and Jakob Gerhardt, and notes that "*the Parties* allegedly entered into that certain agreement dated February 20, 2005, a copy of which is attached hereto as Exhibit A." September 2005 Agreement (Exhibit B) at 1.

///

5

LATHAM&WATKINS<sup>LLP</sup>  SD\591192.1
ATTORNEYS AT LAW
SAN DIEGO

CASE NO. 07CV0673 BTM (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

It is clear from the relevant writings, then, that Kryger, as an officer and director of the companies, entered into a contract on the companies' behalf in which the companies agreed to make certain payments to Jakob Gerhardt and to divide their after-tax profits between Jakob Gerhardt and Fonda Hopkins, LLC. Given this structure, any obligations arising under the February 20, 2005 Agreement could only have been assumed by, and any breach of those obligations could only have been committed by, (1) WG Best, (2) JG USA, (3) Jakob Gerhardt, or (4) Fonda Hopkins, LLC. See Grosvenor Props. Ltd. v. Southmark Corp., 896 F.2d 1149, 1153-54 (9th Cir. 1990) ("Under California law where a corporation's directors are not named as parties to a contract, they are not subject to an independent duty to the corporation's contractual partner[.]"); Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 556, 576 (1973) (explaining that a corporation's agents are not subject to implied duties arising from contractual relationships if they are not parties to the contract); Stigall v. Taft, 58 Cal. 2d 565, 569 (1962) ("An agreement is made, in the contract sense, only upon the mutual assent of the parties thereto[.]").

Plaintiffs, however, have not named W.G. Best, JG USA, or Fonda Hopkins, LLC as defendants to this lawsuit. Nor do they allege that Defendants had obligations under the February 20, 2005 Agreement, that they, as individuals, benefited from that agreement,[1] or that Defendants breached the agreement. Rather, Plaintiffs allege that Defendants "caused" the companies' to cease payment of the €20,000 per month owed Jakob Gerhardt and to underpay Jakob Gerhard the agreed upon share of the companies' gross profits. In other words, Plaintiffs have alleged that *the companies* breached the February 20, 2005 Agreement to which they were a party, that *the companies* failed to comply with their obligations under that Agreement. While Defendants are alleged to have caused these breaches, such actions cannot make them liable for breach of a contract to which they were not parties. See Grosvenor, 896 F.2d at 1153-54; Gruenberg, 9 Cal. 3d at 576. Because Defendants are not parties to the contract they are alleged to have breached, Plaintiffs "can prove no set of facts in support of [their breach of contract]

---

[1] Fonda Hopkins, LLC is, of course, a distinct legal entity from the individual Fonda Hopkins who is a defendant to this action.

6

LATHAM&WATKINS<sup>LLP</sup>  SD\591192.1  
ATTORNEYS AT LAW  
SAN DIEGO

CASE NO. 07CV0673 BTM (WMC)  
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT  
OF DEFENDANTS' MOTION TO DISMISS

claim which would entitle [them] to relief," Conley v. Gibson, 355 U.S. 41, 45-46 (1957), and their second claim for relief for breach of contract should be dismissed accordingly.

### B. Plaintiffs' Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Should Also Be Dismissed Because Defendants Were Not Parties to the Contract At Issue

In their first amended complaint, Plaintiffs allege that covenants of good faith and fair dealing were implied into the February 20, 2005 Agreement and that Defendants breached these covenants. FAC ¶ 37. As discussed above, Defendants were not parties to the February 20, 2005 Agreement and therefore cannot be held liable for breaching those contracts; this finding applies with equal force to implied contractual terms such as the covenant of good faith and fair dealing. See Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 102 (1995) (holding that there can be no tort recovery for breach of a noninsurance contract); Gruenberg, 9 Cal. 3d at 576 (dismissing claim for breach of implied duty of good faith and fair dealing against employee defendants because they were not parties to contract at issue); Austero v. National Cas. Co. of Detroit, 62 Cal. App. 3d 511, 515-16 (1976) (same).

### C. Plaintiffs' Claim Under California's Unfair Competition Law Should Be Dismissed Because Plaintiffs Have Failed to Allege Necessary Elements

Plaintiffs' fifth cause of action, for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., fails for entirely different reasons. As noted above, Plaintiffs in this case are shareholders in two closely held corporations who have sued two individuals who are officers and directors of those corporations. Central to each of the claims for relief in Plaintiffs' complaint, including their claim under the UCL, is their allegation that Defendants misrepresented to Plaintiffs that certain fees paid to Hopkins and/or her corporation were sales commissions rather than management fees, misrepresentations that supposedly allowed the companies to pay Plaintiffs less than they were owed under an agreement between the parties. Importantly, Plaintiffs nowhere allege that Defendants' actions had any effect on the companies' competitors, on consumers, or on competition generally. As such, Plaintiffs have failed to allege a necessary element for a claim under the UCL, and their fifth

7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\591192.1

CASE NO. 07CV0673 BTM (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

claim for relief should be dismissed accordingly.

California's UCL allows courts to enjoin persons engaging in "unfair competition," Cal. Bus. & Prof. Code § 17203, which is defined in the statute as "any unlawful, unfair or fraudulent business act or practice," id. § 17200. As the California Supreme Court has explained, by adopting this language, the California Legislature "broadened the scope of legal protection against wrongful business practices generally, and in so doing extended to the entire consuming public the protection once afforded only to business competitors." Barquis v. Merchants Collection Assn., 7 Cal. 3d 94, 109 (1972). For this reason, the Court found that the UCL's prohibitions are "not confined to anti-competitive business practices," but instead are "at least as equally directed toward 'the right of the public to protection from fraud and [deceit,]' as toward the preservation of fair business competition." Id. (quoting American Philatelic Soc. v. Claibourne, 3 Cal. 2d 689, 698 (1935)) (italics removed). This reading of the statutory language satisfies the UCL's purpose "to protect both consumers and competitors by promoting fair competition in commercial markets for goods or services." Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002). In light of this purpose, California courts have consistently held that, "[t]o state a claim under section 17200, a plaintiff 'need not plead and prove the elements of a tort. Instead, one need only show that members of the public are likely to be deceived.'" South Bay Chevrolet v. GM Acceptance Corp., 72 Cal. App. 4th 861, 877 (1999) (quoting Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1267 (1992)).

Given the above, it is clear that Plaintiffs have failed to state a claim under the UCL. Plaintiffs are not consumers or Defendants' competitors; they have not alleged that Defendants' actions had any effect on competition "in commercial markets for goods or services," that "members of the public are likely to be deceived," or that Defendants' acts were "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory or court-made.[2]" Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). Instead,

---

[2] Violations of California's common law do not qualify as "unlawful" under the UCL. See, e.g., In re Microsoft Corp. Antitrust Lit., 274 F. Supp. 2d 747, 750 (D. Md. 2003); Textron Fin. Corp. v. National Union Fire Ins. Co., 118 Cal. App. 4th 1061, 1072 (2004).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\591192.1

CASE NO. 07CV0673 BTM (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

Plaintiffs are private parties who entered into various contracts with the companies and with Defendants, contracts Plaintiffs claim they were fraudulently induced into entering by Defendants' misrepresentations. Cf. Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 173 (2000) ("[A UCL action] is not an all-purpose substitute for a tort or contract action."). Seeing as how the UCL is aimed at protecting competition, business competitors, and the public, nothing in Plaintiffs' complaint brings Defendants' actions, which are alleged to have deceived and harmed only private parties, within the "unfair competition" prohibited by the UCL.

Another way of reaching the same conclusion is to consider whether Plaintiffs have properly alleged that Defendants behavior was (1) "unlawful," (2) "fraudulent," or (3) "unfair," as those terms are contemplated by the UCL. As noted above, Plaintiffs have not alleged that Defendants' acts were forbidden by law, regulation, or a Court order. Instead, Plaintiffs have alleged only that Defendants' conduct was tortious, which is not enough to state a claim under the UCL's "unlawful" prong. See In re Microsoft Corp. Antitrust Lit., 274 F. Supp. 2d 747, 750 (D. Md. 2003) (explaining that breaches of California common law do not state a claim under the UCL's "unlawful" prong); Textron Fin. Corp. v. National Union Fire Ins. Co., 118 Cal. App. 4th 1061, 1072 (2004) (holding that "reliance on general common law principles to support a cause of action for unfair competition is unavailing"); Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 708, 710-712 (1993) (holding that plaintiffs properly stated a claim for breach of contract but failed to properly state a claim under the UCL's "unlawful" prong). Nor have Plaintiffs stated a claim under the UCL's "fraudulent" prong, as they have not alleged that the public was deceived by Defendants' acts or that there was some harm to the public interest. See Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000) (explaining that under the UCL's "fraudulent" prong one must show that members of the public are likely to be deceived); see also Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc., 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001) ("[J]ust as it is necessary under the 'unfair' prong to show harm not merely to the plaintiff-competitor but also to competition, so, too, should it be necessary under the 'fraudulent' prong to show deception to some members of the public, or harm to the public interest, and not merely to the direct competitor or other non-consumer party to a contract.").

LATHAM&WATKINS\*\*\* SD\591192.1

ATTORNEYS AT LAW
SAN DIEGO

CASE NO. 07CV0673 BTM (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

1  Finally, Plaintiffs have not stated a claim under the UCL's "unfair" prong because they have not
2  alleged conduct by the Defendants "that threatens an incipient violation of an antitrust law, or
3  violates the policy or spirit of one of those laws because its effects are comparable to or the same
4  as a violation of the law, or otherwise significantly threatens or harms competition." <u>Cel-Tech
5  Comm'cs v. L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 187 (1999).[3]  Because Plaintiffs have not
6  sufficiently alleged a violation of the UCL's "unlawful," "fraudulent," or "unfair" prongs, they
7  have failed to state a claim under the UCL for which relief can be granted.  As such, Plaintiffs
8  fifth claim for relief should be dismissed.

## IV.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss Plaintiffs second, third and fifth claims for relief.

Dated: June 18, 2007

LATHAM & WATKINS LLP

By  s/ Daniel J. Lenerz
_____
Daniel J. Lenerz
Attorneys for Defendants
Fonda Hopkins and Frank Kryger

---

[3] By its own terms, <u>Cel-Tech</u> applied only to suits by competitors.  <u>See</u> <u>Cel-Tech</u>, 20 Cal. 4th at 187 n.12.  But the alternative type of suits contemplated by <u>Cel-Tech</u> were "actions by consumers or by competitors alleging other kinds of violations of the unfair competition law such as 'fraudulent' or 'unlawful' business practices[.]"  <u>Id.</u>  Two conclusions can be drawn from this statement: (1) California courts would find that Plaintiffs have failed to state a claim under the UCL because they are neither consumers nor Defendants' competitors, <u>see</u> <u>infra</u>, at 8; and (2) even if Plaintiffs could theoretically state a claim under the UCL despite this fact, the only reasonable <u>Erie</u> guess is that the California courts would require Plaintiffs, who are not consumers, to allege harm to competition to maintain an action under the UCL's "unfair" prong.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\591192.1

CASE NO. 07CV0673 BTM (WMC)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

# EXHIBIT A

Translation

Today the following payments were discussed from the results of WG Best and Jakob Gerhardt USA to Jakob Gerhardt Deutschland and Vonda Hopkins LLC:

1. Messrs. Jakob Gerhardt will receive 20,000 € in royalties per month, payable each time by the 10th of that month, and from the declared annual profits after taxes, 65,5 %. Of these 65,5 % 80 % will not be withdrawn from the company, but will be used for the company's development. The parties agree to declare an annual profit in the amount of approx. 200,000 $.

2. Of the a.m. annual profit of 200,000 $ Vonda Hopkins LLC will receive 34,5 % and will also leave 80 % in the company for further development.

3. Of the gross profit less monies paid for royalties, marketing commission to LLC becomes the new unofficial profit and the difference between the declared profit and unofficial profit will be shared 1/3 Mr. A. and 2/3 LLC;
for example

|  |  |  |
|---|---|---|
|  | gross profit | 1,225,000 |
| less | royalties approx. | 300,000 |
| less | monies LLC | 420,000 |
| less | marketing comm. | 50,000 |
|  | unofficial profit | 455,000 |
|  | legal profit before tax | 200,000 |
|  | profit sharing money | 255,000 |

Hamburg, dd. February 20, 2005

# EXHIBIT B

## SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT ("Agreement") dated this 19th day of September 2005 (the "Effective Date") between Fonda Hopkins, LLC., a California limited liability company ("LLC"), W.G. Best Weinkellerei, Inc., a California corporation ("W.G. Best"), Jakob Gerhardt U.S.A. Inc., a California corporation ("Gerhardt USA") and Jakob Gerhardt, Florida LLC, a Florida limited liability company ("Gerhardt Fla."), on the one hand (collectively referred to hereinafter as the "Gerhardt USA"), and M. Dieter Altmann, an individual ("D. Altmann") and Wein-Und Sektkellerei Jakob Gerhardt Nierstein Schlossdlellereien GMBH und Co. KG ("Gerhardt Germany"), on the other (collectively referred to hereinafter as the "Gerhardt Germany"). Gerhardt USA and Gerhardt Germany are sometimes hereinafter collectively referred to as the Parties.

## RECITALS

A. WHEREAS, Gerhardt Germany rendered certain services to Gerhardt USA;

B. WHEREAS, Gerhardt Germany asserts that it has the right to be paid from Gerhardt USA certain sums for the fiscal years ending June 30, 2004, June 30, 2005 and thereafter;

C. WHEREAS, the Parties allegedly entered into that certain agreement dated February 20, 2005, a copy of which is attached hereto as Exhibit A, as a means for resolving amounts due from Gerhardt USA to Gerhardt Germany for the fiscal years ending June 30, 2004 and thereafter;

D. WHEREAS, Gerhardt USA disputes any such entitlement and both Gerhardt USA and Gerhardt Germany now wish to resolve any issues between them with respect to the sums owed to Gerhardt Germany by Gerhardt USA; and

E. WHEREAS, the Parties do wish by this Agreement to fully and finally resolve, settle and compromise any and all issues, disputes, differences, claims and/or liabilities arising out of or relating to Gerhardt Germany's association with Gerhardt USA.

NOW THEREFORE, in consideration of the foregoing Recitals and of the mutual promises, covenants and conditions hereinafter contained, Gerhardt USA and Gerhardt Germany do hereby agree as follows:

1. **Payment to Gerhardt Germany**. Gerhardt USA shall pay to Gerhardt Germany the sum of Three Hundred Thousand United States Dollars (300,000 USD) and Gerhardt Germany shall accept such sum in full and complete satisfaction of any and all rights, privileges and claims it may now have, or ever had, with respect to payment or reimbursement of any sums by Gerhardt USA.

2. **Release by Gerhardt Germany**. In consideration of and effective upon Gerhardt USA's performance of its payment obligation as set forth in paragraph 1, Gerhardt Germany releases and forever discharges Gerhardt USA and its officers, directors, shareholders, agents,

employees, representatives, attorneys, parents, subsidiaries, and successors (collectively, the "Released Parties") from any and all claims, demands, liabilities, rights, actions, causes of action, whether known or unknown, vested or contingent, in law, equity or otherwise, which Gerhardt Germany may have as of the date of this Agreement against the Released Parties, or any of them, arising out of or relating to the above-described matters.

   3.  **Knowledge and Waiver.** The foregoing release is made by Gerhardt Germany notwithstanding the provisions of California Civil Code Section 1542 which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

   Gerhardt Germany expressly waives any and all rights it may have under the provisions of Civil Code Section 1542. Gerhardt Germany understands the above-quoted provision of Civil Code Section 1542 and knowingly enters into this waiver with the knowledge and advice of its attorneys. It is the intention of Gerhardt Germany in executing this Agreement to release Gerhardt USA from any and all present and future, foreseen and unforeseen causes of action arising out of or relating to its association with Gerhardt USA. Gerhardt Germany acknowledges that it is aware that new or different facts in addition to, or different from those now known or believed to be true regarding the subject matter of this Agreement may hereafter be discovered, but it nonetheless intends to fully, finally and forever settle and release the matters released herein.

   4.  **Due Authority; Sole Ownership.** The Parties each represent and warrant to the other that they have the authority to enter into this Agreement, that they are the sole and absolute owner of each and every claim they are releasing herein, and that they have made no assignment, transfer, conveyance or other disposition to any third party as to any of the claims or matters released herein, either voluntarily or involuntarily.

   5.  **Enforcement.** If any action, suit or proceeding is instituted to enforce or interpret this Agreement, or any of its terms, the prevailing party shall be entitled to recover its costs (whether taxable or not), expenses and reasonable attorneys' fees. The Parties hereby agree to submit to the exclusive jurisdiction of, and consent to venue in, the United States District Court for the Southern District of California or the Superior Court of the State of California, San Diego County, in any action, suit or proceeding to enforce or interpret this Agreement or any of its terms.

   6.  **Entire Agreement.** This Agreement constitutes the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements, understandings and negotiations, both written and oral, between the parties with respect to the subject matter hereof including but not limited to that certain agreement dated February 20, 2005 attached hereto as Exhibit A. Neither this Agreement nor any provision hereof is intended to confer upon any Person other than the parties hereto any rights or remedies hereunder. To the

extent that the provisions of this Agreement are inconsistent with the provisions of any other agreement, the provisions of this Agreement shall prevail.

    7.    **Severability**. In the event that any part or provision of this Agreement is found to be invalid, unenforceable or nonbinding, the remaining portions shall remain in force and fully binding.

    8.    **Counterparts**. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

    9.    **Notices**. Any notice to be given or to be served upon the parties hereto in connection with this Agreement must be in writing (which may include facsimile) and will be deemed to have been given and received when delivered to the address specified by the party to receive the notice. Such notices will be given to a party at such party's address specified on the signature page hereto. Either party may, at any time by giving five days' prior written notice to the other party, designate any other address in substitution of the foregoing address to which any such notice will be given.

    10.    **Governing Law**. This Agreement shall be considered to have been negotiated, executed, delivered and wholly performed in the State of California, and the rights and obligations of the parties to the Agreement shall be construed, interpreted and governed in accordance with the laws of the State of California excluding those laws that direct the application of the laws of another jurisdiction.

    11.    **Binding Effect**. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

*[handwritten note: will be wired in the next 14 days]*

3

IN WITNESS WHEREOF, the parties hereto have executed this Settlement and Release Agreement as of the day and year first above written.

**GERHARDT USA:**

W.G. BEST WEINKELLEREI INC.
a California corporation

By: Frank Kryger
Its: Secretary

FONDA HOPKINS, LLC
a California limited liability company

By: Frank Kryger
Its: Managing Member

Notice Address for Gerhardt USA Parties:

7611 Convoy Court
San Diego, CA 92111
USA
Fax: +1 (858) 712-0090

JAKOB GERHARDT U.S.A. INC.

By: Frank Kryger
Its: Secretary

JAKOB GERHARDT, FLORIDA LLC
a Florida limited liability company

By: Jakob Gerhardt U.S.A. Inc.,
a California corporation, its Managing Member

By: Frank Kryger, Secretary

4

**GERHARDT GERMANY:**

M. DIETER ALTMANN

_____


WEIN-UND SEKTKELLEREI JAKOB
GERHARDT NIERSTEIN SCHLOSSDLELLEREIEN
GMBH UND CO. KG
a German limited liability company

_____
By: M. Dieter Altmann
Its: Managing Director


Notice Address for Gerhardt Germany Parties:

Dalheimer Str. 70
D-55278 Dexheim
Germany
Fax: +49 (0) 6133 57581

5

Translation

Today the following payments were discussed from the results of WG Best and Jakob Gerhardt USA to Jakob Gerhardt Deutschland and Vonda Hopkins LLC:

1. Messrs. Jakob Gerhardt will receive 20,000 € in royalties per month, payable each time by the 10th of that month, and from the declared annual profits after taxes, 65,5 %.
Of these 65,5 % 80 % will not be withdrawn from the company, but will be used for the company's development. The parties agree to declare an annual profit in the amount of approx. 200,000 $.

2. Of the a.m. annual profit of 200,000 $ Vonda Hopkins LLC will receive 34,5 % and will also leave 80 % in the company for further development.

3. Of the gross profit less monies paid for royalties, marketing commission to LLC becomes the new unofficial profit and the difference between the declared profit and unofficial profit will be shared 1/3 Mr. A. and 2/3 LLC;
for example

|      | gross profit            | 1,225,000 |
|------|-------------------------|-----------|
| less | royalties approx.       | 300,000   |
| less | monies LLC              | 420,000   |
| less | marketing comm.         | 50,000    |
|      | unofficial profit       | 455,000   |
|      | legal profit before tax | 200,000   |
|      | profit sharing money    | 255,000   |

Hamburg, dd. February 20, 2005