| | |
|---|---|
| 1 | Bruce H. Jackson, State Bar No. 98118 |
| | Christopher Van Gundy, State Bar No. 152359 |
| 2 | Sharlyn W. Dreyfus, State Bar No. 247958 |
| | **BAKER & McKENZIE LLP** |
| 3 | Two Embarcadero Center, 11th Floor |
| | San Francisco, CA  94111 |
| 4 | Telephone: +1 415 576 3000 |
| | Facsimile:  +1 415 576 3099 |
| 5 | |
| | George E. Fleming, State Bar No. 65804 |
| 6 | **BAKER & McKENZIE LLP** |
| | 101 West Broadway, 12th Floor |
| 7 | San Diego, CA  92101 |
| | Telephone: +1 619 236 1441 |
| 8 | Facsimile:  +1 619 236 0429 |
| 9 | Attorneys for Plaintiffs |
| | WEIN- UND SEKTKELLEREI JAKOB |
| 10 | GERHARDT NIERSTEINER |
| | SCHLOSSKELLEREIEN GmbH & Co. KG and |
| 11 | MAX DIETER ALTMANN |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| WEIN- UND SEKTKELLEREI JAKOB GERHARDT NIERSTEINER SCHLOSSKELLEREIEN GmbH & Co. KG, a German limited liability company, MAX DIETER ALTMANN, an individual, <br><br>Plaintiffs, <br><br>v. <br><br>FONDA HOPKINS, an individual, FRANK KRYGER, an individual, W.G. BEST WEINKELLEREI, INC., a California corporation, and MONTESQUIEU CORP., formerly known as JAKOB GERHARDT USA, INC., a California corporation, <br><br>Defendants. | **Case No.  3:07-cv-00673-BTM-WMC** <br><br>**SECOND AMENDED COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES, RESTITUTION, AN ACCOUNTING, AND FOR DECLARATORY RELIEF** <br><br>**DEMAND FOR JURY TRIAL** <br><br>**[FILED VIA E-FILING]** |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

SFODMS/6533667.1

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

Plaintiffs Wein- und Sektkellerei Jakob Gerhardt Niersteiner Schlosskellereien GmbH & Co. KG, a German limited liability company ("Jakob Gerhardt"), Max Dieter Altmann ("Altmann"), an individual, (sometimes collectively referred to herein as "Plaintiffs"), hereby allege as follows:

## JURISDICTION AND VENUE

1. This Court has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a) because the dispute is between citizens of a State and citizens of a foreign state, and because the amount in controversy exceeds the sum or value of seventy-five thousand U.S. dollars ($75,000), exclusive of interest and costs.

2. Venue is proper in this district pursuant to 28 U.S.C. Section 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district, a substantial part of property that is the subject of the action is situated within this district, and/or all of the Defendants reside within this district.

## THE PARTIES

3. Jakob Gerhardt is, and at all times relevant to this action, has been, a German limited liability company with its principal place of business in Nierstein, Germany.  Jakob Gerhardt produces fine German wines and arranges for their distribution within Europe, North and South America.

4. Altmann, a citizen and resident of Germany, is a shareholder in, and the managing director of, Jakob Gerhardt.  Altmann holds shares on behalf of Jakob Gerhardt in certain U.S. corporations that are involved in this action.

5. Jakob Gerhardt is informed and believes and thereon alleges that Defendant Fonda Hopkins ("Hopkins") is a citizen of the State of California residing in San Diego County, California.

6. Jakob Gerhardt is informed and believes and thereon alleges that Defendant Frank Kryger ("Kryger") is a citizen of the State of California residing in San Diego County, California.

7. Jakob Gerhardt is informed and believes and thereon alleges that Defendant W.G. Best Weinkellerei, Inc ("W.G. Best") is, and at all times relevant to this action, has been, a California corporation with its principal place of business in San Diego, California.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

SFODMS/6533667.1

1

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

8. Jakob Gerhardt is informed and believes and thereon alleges that Defendant Montesquieu Corp., formerly known as Jakob Gerhardt USA, Inc., ("Montesquieu Corp.") is, and at all times relevant to this action, has been a California corporation with its principal place of business in San Diego, California. (Hopkins, Kryger, W.G. Best, and Montesquieu Corp. are sometimes referred to herein collectively as "Defendants").

9. Jakob Gerhardt is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants was the agent or employee of each of the remaining Defendants and, in doing the things hereinafter alleged, was acting within the course and scope of such agency or employment.

10. Jakob Gerhardt is informed and believes, and based upon this information and belief alleges, that said Defendants, and each of them, conspired together and willfully formed a deliberate design and purpose to do, and/or entered into a scheme to do, the acts and/or omissions alleged herein, and in pursuance thereof, did and/or caused to be done such acts and/or omissions; that all of said acts and/or omissions were participated in and were done by all of said Defendants, or any one or more of them, as steps in furtherance of said conspiracy, or a portion thereof, and for the unlawful purposes as set forth herein.

**GENERAL ALLEGATIONS**

11. For several years, Altmann/Jakob Gerhardt was the majority shareholder of two California corporations engaged in the business of importing, marketing and distributing German and other wines within the United States – Defendants Montesquieu Corp. and W.G. Best (collectively "US subsidiaries"). At all relevant times, Hopkins and Kryger were variously officers, directors and/or general managers of these corporations. In part through gifts of stock from Jakob Gerhardt, Hopkins eventually became the owner of approximately one-third of the shares of Montesquieu Corp. and W.G. Best, and Altmann's/Jakob Gerhardt's ownership interests became approximately two-thirds of all outstanding shares of these companies.

12. Beginning in or about 2003, Hopkins and Kryger embarked on a calculated course to funnel millions of dollars of profit from the US subsidiaries to business entities owned and/or controlled by Hopkins. As more fully explained herein, Hopkins and/or Kryger misleadingly

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

SFODMS/6533667.1

2

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

characterized to Altmann and Jakob Gerhardt these "management" or "marketing" fees (hereinafter "management fees") as "sales commissions." These management fees were in gross disproportion to Hopkins' actual shareholdings in the US subsidiaries to the detriment of Altmann's and Jakob Gerhardt's legal and financial rights.

13. In order to effectuate this plan, Hopkins and/or Kryger first convinced Altmann/Jakob Gerhardt to agree to give up voting rights through a conversion of shares into essentially non-voting "Class B" shares. The pretense for this recommendation was to reduce the chances of an audit by US tax or alcohol control authorities. Altmann and Jakob Gerhardt's personnel did not speak fluent English, and they in general were unfamiliar with U.S. corporate law and relied upon Hopkins' and Kryger's recommendations.

14. Hopkins and Kryger never explained to Altmann/Jakob Gerhardt that the forfeiture of voting rights would deprive them of any meaningful say in the management of the US subsidiaries, including, but not limited to: the selection of officers and directors; decisions regarding corporate name changes as to the US subsidiaries; and the few Class B voting items by diluting their Class B shares to minority status through the sale of Class B treasury shares to a third-party friendly to Hopkins and Kryger. The true motive of Hopkins and Kryger in convincing Altmann/Jakob Gerhardt to give up voting rights was to take control of the US subsidiaries in order to execute their plan of withdrawing monies from the US subsidiaries in gross disproportion to Hopkins' actual shareholdings.

15. In or about 2004, as sole holder of all voting shares (now denominated "Class A" shares), Hopkins, in conjunction with Kryger, caused the US subsidiaries to enter into "management" or "marketing" service fee agreements with business entities owned and/or controlled by Hopkins. These agreements ultimately entitled Hopkins to "management fee" payments in gross disproportion to the one-third of the shares she actually held in the US subsidiaries.

16. Next, Hopkins and Kryger negotiated a February 20, 2005 agreement with Altmann and Jakob Gerhardt regarding the payment of royalties to Jakob Gerhardt and the division of profits from the operation of the US subsidiaries based on the relative shareholdings of Altmann/Jakob Gerhardt and Hopkins ("February 2005 Agreement"). According to the essential terms and

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

SFODMS/6533667.1

3

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

conditions of this agreement, Hopkins and Kryger on the one hand, and Altmann and Jakob Gerhardt on the other hand, agreed as follows: Jakob Gerhardt was to receive 20,000 Euros per month and a share of the gross profits of the US subsidiaries proportionate to the Altmann/Jakob Gerhardt shareholdings in the US subsidiaries (65.5%); and Hopkins, through a company owned and/or controlled by her, was to receive a share of the gross profits proportionate to her shareholdings in the US subsidiaries (34.5%). These terms and conditions are reflected in a contemporaneous writing signed by both Kryger (on behalf of himself as an individual and on behalf of Hopkins as an individual) and Altmann (on behalf of himself and Jakob Gerhardt).

17. In a related side agreement reflected in correspondence by Kryger to Altmann, Altmann's son Oliver Altmann was to receive an annual salary of $50,000 per year for his efforts in overseeing the operations of the US subsidiaries. Oliver Altmann was never paid any such salary. By means of the misrepresentations more fully explained below, Hopkins and Kryger also fraudulently induced Altmann/Jakob Gerhardt to enter into two other written agreements at or about the same time as the February 2005 Agreement: a Binding Memorandum of Understanding dated February 20, 2005 ("the Binding Memorandum") (in which Kryger signed on behalf of a company owned and/or controlled by Hopkins); and a Settlement Mutual General Release and Indemnification Agreement dated February 19, 2005 ("the February 2005 Settlement Mutual Release") (signed by both Hopkins and Kryger as individuals and in their capacities as officers or managing members of the US subsidiaries and one or more business entities owned and/or controlled by Hopkins). Hopkins and Kryger fraudulently induced Altmann and Jakob Gerhardt to enter into these agreements in an attempt to obtain a release of prior claims against them by Altmann and Jakob Gerhardt, and to obtain fraudulently a ratification of various actions by the US subsidiaries.

18. Hopkins and Kryger breached the February 2005 Agreement by using their complete control of the US subsidiaries to cause them to underpay Jakob Gerhardt the agreed upon share of the gross profits. They did this by intentionally misrepresenting to Altmann/Jakob Gerhardt that the management fees paid to Hopkins and/or her business entities were "sales commissions" paid to various sales agents of the US subsidiaries. Sales commissions reduce the gross profit figures, and

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

SFODMS/6533667.1

4

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

therefore correspondingly reduced the amount of gross profit available to Jakob Gerhardt as its agreed upon share under the February 2005 Agreement.

19. In this misleading and deliberate manner, Hopkins and/or Kryger were able to conceal from Altmann and Jakob Gerhardt the true amounts actually paid Hopkins and/or her companies, and therefore, the true amounts due and owing Jakob Gerhardt under the agreed upon profit division of the February 2005 Agreement. Because the US subsidiaries were heavily dependent upon commission-based sales agents to sell the wine products, the sales commissions paid out on actual wine sales were relatively high. Thus, this category of expense easily could hide the otherwise excessive "management fees" wrongfully paid to Hopkins and/or business entities owned and/or controlled by her.

20. In or about the Fall of 2005, Hopkins and/or Kryger also breached the February 2005 Agreement by causing the US subsidiaries to cease payment of the 20,000 Euros per month due and owing Jakob Gerhardt under that agreement. Moreover, they breached the February 2005 Agreement by failing to pay Oliver Altmann his $50,000 annual salary. In or about September 2005, Hopkins and Kryger sought to resolve differences with Altmann and Jakob Gerhardt regarding their performance under the February 2005 Agreement.

21. At this time (September, 2005), Altmann and Jakob Gerhardt were still unaware of Hopkins' and Kryger's wrongful payment to Hopkins of hundreds of thousands, or millions, of dollars out of the US subsidiaries and into her personal companies in gross disproportion to her actual shareholdings in the US subsidiaries. Altmann and Jakob Gerhardt at this time were also unaware of Hopkins' and Kryger's misleading reporting of the payment of "management fees" to Hopkins and/or her personal corporations as "sales commissions." Accordingly, on or about September 19, 2005, Hopkins and/or Kryger initiated, negotiated and concluded a written contract in English with Altmann and Jakob Gerhardt purportedly to cancel the February 2005 agreement and all other sums due and owing Jakob Gerhardt in return for a one-time payment of $300,000 ("the September 2005 Agreement").

22. Like the Binding Memorandum and the February 2005 Settlement Mutual Release, the September 2005 Agreement was void ab initio because Hopkins and/or Kryger obtained

5

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

SFODMS/6533667.1

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

Altmann's and Jakob Gerhardt's alleged assent based on fraudulent representations regarding the gross profit of the US subsidiaries and regarding payment to Hopkins and/or her companies of management fees misleadingly characterized as sales commissions. Moreover, some time after conclusion of the alleged September 2005 Agreement, Defendants changed the name of Jakob Gerhardt USA, Inc. to Montesquieu Corp. without prior notice to, or permission from, Altmann or Jakob Gerhardt. They also sold treasury Class B shares to a friendly third-party so as to dilute and to render virtually worthless the Altmann/Jakob Gerhardt Class B shareholdings as the minority shareholder in that class (B) of shareholdings in the entity formerly known as Jakob Gerhardt USA, Inc.

23.     As a direct and proximate result of the foregoing wrongful acts by Defendants, Altmann and Jakob Gerhardt have suffered damages potentially into the many millions of dollars.

**FIRST CLAIM FOR RELIEF**

**(Breach of Fiduciary Duties)**

**(Against Defendants Hopkins and Kryger)**

24.     Plaintiffs hereby incorporate paragraphs 1 through 23 above in this claim for relief by this reference.

25.     As the holder of the sole voting shares of stock in the US subsidiaries, Hopkins held the entirety of the controlling interests in the US subsidiaries and in practice was the majority shareholder. As majority shareholder, Hopkins owed Altmann/Jakob Gerhardt fiduciary duties of loyalty and fairness not use her power to control the corporate activities of the US subsidiaries to benefit herself alone or in a manner detrimental to the minority shareholder, Altmann/Jakob Gerhardt. Any use to which Hopkins put the US subsidiaries or her power to control the US subsidiaries had to benefit all shareholders proportionately and could not conflict with the proper conduct of the US subsidiaries' business.

26.     Hopkins breached these fiduciary duties by engaging in the aforementioned acts, including, but not limited to: by withholding her true motive in persuading Altmann and Jakob Gerhardt to agree to the conversion of their shares in the US subsidiaries into non-voting class B shares, namely, to remove from Plaintiffs the ability to vote against Hopkins' self-interested

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

SFODMS/6533667.1

6

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

contracts with her own companies for the payment of the aforementioned management fees; the payment of management fees to corporations owned or controlled entirely by her grossly disproportionate to her stockholdings in the US subsidiaries; through submission of the misleading financial statements to Altmann/Jakob Gerhardt in which management fees paid to Hopkins and/or her corporations were falsely characterized as sales commissions; and through fraud in procuring the Binding Memorandum, the February 2005 Settlement Mutual Release, and the September 2005 Agreement by underreporting gross profit due to the false characterization of Hopkins' "management fees" as "sales commissions," among other wrongful acts.

27. At all relevant times, Kryger aided and abetted Hopkins in her breaches of various fiduciary duties owing to Altmann/Jakob Gerhardt for his own financial gain.

28. As a direct and proximate result of Hopkins and Kryger's breaches of these fiduciary duties, Plaintiffs have suffered damages in an amount to be determined at trial, but in excess of the jurisdictional minimum of this Court.

29. Plaintiffs are informed and believes and thereon allege that Hopkins and Kryger acted as set forth above with full knowledge of the consequences and damage being caused to Altmann and Jakob Gerhardt. Hopkins and Kryger's conduct was willful, fraudulent, oppressive, malicious and/or outrageous, warranting condemnation and deterrence.

30. Accordingly, Plaintiffs are entitled to punitive damages against Hopkins and Kryger in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract)**

**(Against All Defendants)**

31. Plaintiffs hereby incorporate paragraphs 1 through 30 above in this claim for relief by this reference.

32. On or about February 20, 2005, Altmann and Jakob Gerhardt, on the one hand, and Hopkins and Kryger, in their individual capacities and/or alternatively on behalf of W.G. Best and Montesquieu Corp., on the other hand, entered into the February 2005 Agreement for payment of royalties and profits from operations by the US subsidiaries to Jakob Gerhardt and to at least one

7

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

SFODMS/6533667.1

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

company wholly owned and/or controlled by Hopkins. Both Kryger and Hopkins were, as individuals, parties to the February 2005 Agreement just as they were parties as individuals to the contemporaneous February 2005 Settlement Mutual Release. The February 2005 Agreement was signed by both: Kryger, on behalf of himself and Hopkins, and/or alternatively on behalf of W.G. Best and Montesquieu Corp.; and Altmann, on behalf of himself and Jakob Gerhardt.

33. Hopkins and Kryger, as individuals and/or alternatively on behalf of W.G. Best and Montesquieu Corp., on the one hand, and Altmann, and Jakob Gerhardt, on the other hand, agreed pursuant to the February 2005 Agreement that the US subsidiaries would pay Jakob Gerhardt: 1) 20,000 Euros per month, by the 10th of each month; and 2) 65.5% of the declared annual profits after taxes, whereby 80% of this payment would belong to Jakob Gerhardt but remain in the US subsidiaries for their development. Defendants, Altmann and Jakob Gerhardt further that agreed one of Hopkins' corporations would receive 34.5% of declared annual profits and would also leave 80% of this amount in the US subsidiaries for their further development. These percentage payments corresponded to the shares actually held by Hopkins and Altmann/Jakob Gerhardt in each of the two US subsidiaries.

34. Defendants breached the February 2005 Agreement by, among other acts, causing the US subsidiaries to cease the monthly payments, by underpaying Jakob Gerhardt its share of the US subsidiaries' profits as agreed, and by failing to pay Oliver Altmann his $50,000 annual salary. Defendants underpaid Jakob Gerhardt its share of the profits by underreporting the true gross profits of the US subsidiaries. They underreported the gross profits of the US subsidiaries by characterizing "management fee" payments to Hopkins' corporations as "sales commissions," whereby the misleadingly inflated value of sales commissions correspondingly reduced gross profits and therefore Jakob Gerhardt's agreed upon share of those gross profits.

35. Plaintiffs performed as required by the written terms and conditions of the February 2005 Agreement.

36. There was no justifiable or reasonable excuse for Defendants' aforementioned breaches of the February 2005 Agreement, including, but not limited to, cessation of the monthly

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

SFODMS/6533667.1

8

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

payments, failure to pay Jakob Gerhardt its agreed upon share of the gross profits, and failure to pay Oliver Altman his annual salary.

37. As a direct and proximate result of Defendants' breaches of their contractual obligations pursuant to the terms and conditions of the February 2005 Agreement, Plaintiffs have suffered damages in an amount to be determined at trial, but in excess of the jurisdictional minimum of this Court.

## THIRD CLAIM FOR RELIEF

**(Breach of The Implied Covenant Of Good Faith And Fair Dealing)**

**(Against All Defendants)**

38. Plaintiffs hereby incorporate paragraphs 1 through 37 above in this claim for relief by this reference.

39. Implied into the February 2005 Agreement were covenants of good faith and fair dealing. Defendants breached these implied covenants of good faith and fair dealing when they committed the aforementioned acts, including the misrepresentations set forth above, the dilution of the Class B shares, and the failure to pay Jakob Gerhardt the amounts due and owing it and Oliver Altmann pursuant to the February 2005 Agreement.

40. As a direct and proximate result of Defendants' breaches of the implied covenants of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be determined at trial, but in excess of the jurisdictional minimum of this Court.

## FOURTH CLAIM FOR RELIEF

**(Fraud)**

**(Against All Defendants)**

41. Plaintiffs hereby incorporate paragraphs 1 through 40 above in this claim for relief by this reference.

42. As more fully set forth herein, Hopkins and Kryger deliberately made numerous misrepresentations to Altmann and/or his son Oliver Altmann of Jakob Gerhardt by falsely characterizing the US subsidiaries' payment of management fees to Hopkins and/or her companies as "sales commissions" paid to sales agents. They did so to underreport gross profit with the intent

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

SFODMS/6533667.1

9

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

that Altmann and Jakob Gerhardt rely thereon to the detriment of their legal and financial rights. As explained below, these misrepresentations were made to Altmann, Oliver Altmann, and Jakob Gerhardt, at least as early as January, 2004, and continue through to the present time in the form of periodic written communications and financial statements from Hopkins and Kryger and/or their agents, employees or contractors, and in meetings in person with Altmann and Oliver Altmann. At all relevant times, Hopkins and Kryger were variously officers, directors and/or general managers of W.G. Best and Montesquieu Corp. and had authority to make representations on behalf of W.G. Best and Montesquieu Corp.

43. Among other ways, Hopkins and Kryger made these misrepresentations to Altmann, Oliver Altmann, and Jakob Gerhardt beginning on or about January, 2004, by causing the US subsidiaries to issue weekly, monthly and/or annual profit and loss statements, income statements and/or balance sheets (not an exhaustive list) reflecting the misleading reporting of management fees actually paid to Hopkins as "sales commissions" supposedly paid to sales agents. Hopkins and her companies receiving these alleged sales commissions were not sales agents, but supposedly provided instead "marketing" and "management" services. Also, Kryger made the same deliberately misleading statements by underreporting Hopkins' management fees to Altmann and/or his son Oliver on two occasions in meetings in Germany on or about February 20, 2005 and September, 2005. At all relevant times, Hopkins and Kryger were variously officers, directors and/or general managers of W.G. Best and Montesquieu Corp. and had authority to make representations on behalf of W.G. Best and Montesquieu Corp.

44. The true facts were that much of the sales commissions reportedly paid to sales agents of the US subsidiaries were actually management fees caused by Hopkins and/or Kryger to be paid by the US subsidiaries to Hopkins and/or her companies, and that therefore Hopkins and/or her companies were paid considerably more in management fees by the US subsidiaries than reported to Altmann and Jakob Gerhardt by Hopkins and Kryger as set forth above. These deliberately misleading reportings therefore resulted in the underreporting to Altmann and Jakob Gerhardt of the true gross profits of the US subsidiaries.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

SFODMS/6533667.1

10

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

45. These were material misrepresentations that Defendants intended Altmann and Jakob Gerhardt to rely on to their detriment, and Altmann and Jakob Gerhardt did so rely thereon to their detriment. Had Altmann and Jakob Gerhardt known of the true facts, among other actions, they would have investigated and demanded to be paid the true amount of profit of the US subsidiaries due and owing Jakob Gerhardt pursuant to the terms and conditions of the February 2005 Agreement, and they would not have assented to the Binding Memorandum, the February 2005 Settlement Mutual Release, and the September 2005 Agreement. Altmann and Gerhardt did not discover this fraud until well into calendar year 2006.

46. As a direct and proximate result of Plaintiffs' reliance on these intentional misrepresentations of fact, Plaintiffs have suffered damages in an amount to be determined at trial, but in excess of the jurisdictional minimum of this Court.

47. Plaintiffs are informed and believes and thereon allege that Hopkins and Kryger acted as set forth above with full knowledge of the consequences and damage being caused to Altmann and Jakob Gerhardt. Hopkins and Kryger's conduct was willful, fraudulent, oppressive, malicious and/or outrageous, warranting condemnation and deterrence.

48. Accordingly, Plaintiffs are entitled to punitive damages against Defendants in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

**(Violations of Cal. Bus. & Prof. Code Secs. 17200 et seq.)**

**(Against All Defendants)**

49. Plaintiffs hereby incorporate paragraphs 1 through 48 above in this claim for relief by this reference.

50. Defendants' fraud and breaches of fiduciary duties, of contract, of the implied covenant of good faith and fair dealing and violations of relevant state statutes, including, but not limited to, Sections 1709 and 1710 of the California Civil Code, all as more fully described above, constitute "unlawful," "unfair" and/or "fraudulent" business acts or practices in violation of California's Unfair Competition Act, Sections 17200 et seq. of the California Business & Professions Code. Plaintiffs and Defendants are not competitors.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

SFODMS/6533667.1

11

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

51. As a direct and proximate result of the aforementioned unlawful, unfair and/or fraudulent business practices, Plaintiffs are entitled to restitution of the full amount of all payments to Hopkins and/or her companies wrongfully caused by Hopkins and Kryger to be made by the US subsidiaries through fraud, breaches of fiduciary duty, and in derogation of Plaintiffs' express and implied rights under the February 2005 Agreement, and to a declaration that the Binding Memorandum, the February 2005 Settlement Mutual Release, and the September 2005 Agreement are invalid, unenforceable and a nullity due to the aforementioned fraud.

## SIXTH CLAIM FOR RELIEF

### (Accounting)

### (Against All Defendants)

52. Plaintiffs hereby incorporate paragraphs 1 through 51 above in this claim for relief by this reference.

53. Pursuant to the foregoing fiduciary and express and implied contractual obligations, Defendants were under a duty to report to Plaintiffs, accurately and timely, all relevant information regarding the financial condition, management, ownership and name changes, and general operations of the US subsidiaries, including, but not limited to, financial information reflecting an accurate and timely description of the management fees paid by the US subsidiaries to Hopkins and/or business entities owned and/or controlled by her. As more fully described above, Defendants breached these duties by, among other acts or omissions, mischaracterizing the management fees as "sales commissions" and/or by not reporting them at all or in a timely fashion.

54. It is uncertain as to whether or to what extent Defendants have engaged, and/or will continue to engage, in this deception and/or failure to provide Plaintiffs with accurate and timely information noted above, including, but not limited to, the payment of management fees by the US subsidiaries to Hopkins and/or business entities owned and/or controlled by her. Recently, Defendants have refused to provide Plaintiffs with access to the US subsidiaries' records and accountants and agents for financial information, referring them instead to outside counsel. Accordingly, it is necessary that the Court order an accounting of the US subsidiaries' financial condition, management, ownership and name changes, and general operations for the years 2000

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

SFODMS/6533667.1

12

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

through to the present time, including, but not limited to: profit and loss statements; audited and unaudited income statements and balance sheets; all documents and communications involving Dan Lincoln and "DGW"; all accounting and financial notes and worksheets, particularly those reflecting the payment of the aforementioned management fees paid to Hopkins and/or business entities owned and/or controlled by her; and all documents and communications exchanged by and between the US subsidiaries, Fonda Hopkins, Frank Kryger, James Scoffin, all business entities owned and/or controlled by Hopkins, Jakob Gerhardt, Altmann, Oliver Altmann, and the US subsidiaries' accountants and auditors.

## SEVENTH CLAIM FOR RELIEF

### (Declaratory Relief)

### (Against All Defendants)

55. Plaintiffs hereby incorporate paragraphs 1 through 54 above in this claim for relief by this reference.

56. An actual controversy has arisen and now exists relating to the rights and duties of the parties regarding the February 2005 Agreement, the September 2005 Agreement, the Binding Memorandum, and the February 2005 Settlement Mutual Release.

57. Plaintiffs contend that the parties' rights and duties under the February 2005 Agreement are in full force and effect, that Defendants are in breach of the February 2005 Agreement, and that the parties' rights and duties under this agreement are as follows: 1) that Defendants through the US subsidiaries would pay Jakob Gerhardt 20,000 Euros per month, by the 10th of each month; 2) that Jakob Gerhardt would retain 65.5% of the declared annual profits after taxes, whereby 80% of this payment would belong to Jakob Gerhardt but remain in the US subsidiaries for their development; 3) that Hopkins' corporations would receive 34.5% of declared annual profits and would also leave 80% of this amount in the US subsidiaries for their further development; and 4) that Oliver Altmann would receive an annual salary of $50,000. On information and belief, Plaintiffs believe that Defendants dispute these assertions.

58. Plaintiffs therefore request that the Court enter a declaratory judgment that the parties' rights and duties under the February 2005 Agreement are in full force and effect, that

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

SFODMS/6533667.1

13

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

Defendants are in breach of the February 2005 Agreement, and that the parties' rights and duties under this agreement are as follows: 1) that Defendants or the US subsidiaries would pay Jakob Gerhardt 20,000 Euros per month, by the 10th of each month; 2) that Jakob Gerhardt would retain 65.5% of the declared annual profits after taxes, whereby 80% of this payment would belong to Jakob Gerhardt but remain in the US subsidiaries for their development; 3) that Hopkins' corporations would receive 34.5% of declared annual profits and would also leave 80% of this amount in the US subsidiaries for their further development; and 4) that Oliver Altmann would receive an annual salary of $50,000.

59.  Plaintiffs further contend that the Binding Memorandum, the February 2005 Settlement Mutual Release, and the September 2005 Agreement are invalid, unenforceable and a nullity for the reasons set forth more fully herein.  On information and belief, Plaintiffs believe that Defendants dispute these assertions.

60.  Plaintiffs therefore further request that the Court enter a declaratory judgment that the Binding Memorandum, the February 2005 Settlement Mutual Release, and the September 2005 Agreement are invalid, unenforceable and a nullity for the reasons set forth more fully herein.

**PRAYER FOR RELIEF**

(a)  For compensatory damages exclusive of interest in the amount of at least the jurisdictional minimum of this Court, according to proof at trial;

(b)  For prejudgment and post-judgment interest as allowed by law;

(c)  For an accounting;

(d)  For a declaratory judgment according to proof at trial;

(e)  For restitution according to proof at trial;

(f)  That Plaintiffs be awarded punitive damages as justice may so provide;

(g)  That Plaintiffs be awarded their reasonable attorneys' fees expended in obtaining the foregoing relief;

14

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

SFODMS/6533667.1

1  (h) That Plaintiffs be awarded their costs of suit and such other relief as justice may
2  provide.

Dated: November 8, 2007

Bruce H. Jackson
Christopher Van Gundy
Sharlyn W. Dreyfus
**BAKER & McKENZIE LLP**

George E. Fleming
**BAKER & McKENZIE LLP**

By: /s/
   Christopher Van Gundy
   Attorneys for Plaintiffs
WEIN- UND SEKTKELLEREI JAKOB
GERHARDT NIERSTEINER
SCHLOSSKELLEREIEN GmbH & Co. KG
and MAX DIETER ALTMANN
christopher.vangundy@bakernet.com

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

SFODMS/6533667.1

15

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiffs Wein- und Sektkellerei Jakob Gerhardt Niersteiner Schlosskellereien GmbH & Co. KG and Max Dieter Altmann hereby demand a trial by jury of all issues so triable.

Dated: November 8, 2007

Bruce H. Jackson
Christopher Van Gundy
Sharlyn W. Dreyfus
**BAKER & McKENZIE LLP**

George E. Fleming
**BAKER & McKENZIE LLP**

By: _____/s/_____
    Christopher Van Gundy
    Attorneys for Plaintiffs
WEIN- UND SEKTKELLEREI JAKOB GERHARDT NIERSTEINER SCHLOSSKELLEREIEN GmbH & Co. KG and MAX DIETER ALTMANN
christopher.vangundy@bakernet.com

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

SFODMS/6533667.1

16

Case No. 3:07-cv-00673-BTM-WMC
SECOND AMENDED COMPLAINT FOR DAMAGES